## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* PATRICIA SCOTT and JOHN L. TUDBURY<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC ARCHITECTS AND ENGINEERS (PAE), INC. dba PAE Government Services, Inc, aka PAE Group,<br><br>Defendant. | Case No. 13-cv-01844 (CKK)<br><br>**FALSE CLAIMS ACT**<br>**FILED UNDER SEAL**<br>**JURY DEMAND** |

## FIRST AMENDED COMPLAINT

1.      This lawsuit alleges Defendant has systemically defrauded the United States in Civilian

Policing (CIVPOL) contracts with the United States Department of State (DoS) and The Bureau

of International Narcotics and Law Enforcement Affairs (INL) for several years. Defendants'

fraud takes various forms, including creating false invoices to claim entitlement to reimbursement

for services and personnel on the ground in Beirut, Lebanon and elsewhere, billing for services

and products that were never provided, fraudulently billing the government for lodging, services,

vehicles and equipment used for personal reasons, falsely claiming travel money in scheme to

defraud the government for services more costly than the best price in order to raise profits,

falsely claiming numbers of personnel and training under the contract than that which was

actually delivered, as a result of which the Defendant cost the United States money that rendered

no value to the government in violation of the contracts of Defendant with the United States

Department of State and INL.

2.      Relators are former employees with direct and personal knowledge relating to Defendant's fraud.  They bring this action on behalf of the United States under the *qui tam* provision of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, as amended ("The Act").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 31 U.S.C. §3732, which specifically confers jurisdiction on this Court of actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

4.      This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. §3732(a), which provides that "[a]ny action under § 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business or in which any act proscribed by § 3729 occurred."

5.      As required under the False Claims Act, 31 U.S.C. § 3730(a)(2), Relators gave the United States personal statements setting forth material evidence and information related to this Complaint in advance of filing this action.   In addition, Relators offered to meet with the United States to explain and describe these fraudulent schemes, Relators residing in the United States, but who work abroad and only were able to meet with the United States representatives by telephone.

6.      The United States was unaware of the Defendants' fraudulent schemes, mischarging, false charging, false certifications, failure to comply with the government contracts, and set forth in this Complaint until being alerted by Relators.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(a) in that Defendants are registered to and do business within this judicial district, and acts and contracts were performed and entered into in this judicial district by Plaintiff United States acting through the Department of State and

INL under the Civilian Policing program (hereafter "CIVPOL" contracts) from 2006 to the present.

8.      This action is filed under seal in compliance with the False Claim Act requirements.

## PARTIES

9.      Relators Patricia Scott and John Tudbury are United States citizens residing in the United States as set forth in caption above.  All were previously employed by Defendant, and have direct and personal knowledge relating to Defendant's fraudulent schemes.

10.      Pacific Architects and Engineers, Inc. does business as PAE Government Services, Inc. aka PAE Group ("PAE") is a company operating in 45 countries that has many contracts with the United States for logistics, construction, services including peace keeping, justice programs, capacity building, and international policing programs.[1]  They are incorporated in California, but have officers in Virginia, do business in the district of Columbia with the United States government, Department of State.  Their agent for service of process is Corporation Service Company Bank of America Center, 16th Floor, 1111 East Main St., Richmond, VA 23219.  In 2010, PAE was one of five companies awarded a CIVPOL and Global Policing contract with the United States Department of State (DoS) valued at $10 billion over five years.[2]

---

[1] See  PAE website, http://www.paegroup.com/capabilities-operations.

[2] See  "Five More Contractors to get a Piece of $10 Billion Global 'Civilian Police' Pie" May 12, 2011 , at http://www.tradeaidmonitor.com/2011/05/contractors-billion-global-civilian-police.html#tp; see also http://www.govconwire.com/2011/06/state-department-awards-10b-international-law-enforcement-contract-to-five-companies/

## FRAUD – SERVICES UNDER CONTRACT  WITH
## DEPARTMENT OF STATE IN BEIRUT, LEBANON

11.     Since 2007, the United States Department of State (DoS), The Bureau of

International Narcotics and Law Enforcement Affairs (INL) (international narcotics) awarded

Defendant PAE service contracts to provide civilian police training and administrative services

in Beirut, Lebanon, among a dozen other locations throughout the world.

12.     Relators operated under the DoS (INL) contract, Equipping and Training Internal

Security Forces, contract number S-AQM-MA-08-F-3118, Beirut, Lebanon, and any predecessor

addenda or successor addenda contracts to that contract, including but not limited to the following

Task Order numbers:

| Date | Project number | Task Order | Job number | Description | Source |
|------|----------------|-----------|------------|-------------|--------|
| 10/1/2009 | | | 650 | Lebanon CIV POL | Tudbury time sheet |
| 4/26/2010 | 650TXLEBA | | | Lebanon CIV POL | Tudbury time sheet |
| 9/26/2010 | 650TXLEBA-01 | 4044-1001 | 650-LEX-2-TMR000 | Lebanon CIV POL | Tudbury time sheet |
| 11/28/2010 | 650-T6-LEBA-01 | 6022-0000 | | Lebanon CIV POL | Tudbury time sheet |
| 1/30.2011 | 650-T6-LEBA-01 | 6044-1001 | | Lebanon CIV POL | Tudbury time sheet |
| 4/24/2011 | 650-T6-LEBA-01 | 6044-1061 | | Lebanon CIV POL | Tudbury  time sheet |
| 10/1/2011 | 650-T6-LEBA-01 | 6040-0004 | 458-11 | Lebanon CIV POL | Tudbury time sheet |
| 9/25/2010 - 9/24/2011 | 650-T6-LEBA-01 | 6044-1004 | 411-11 | Lebanon CIV POL | Scott time sheet – HR mgr |
| 9/25/2010 - 9/24/2011 | 650-T6-LEBA-01 | 6026-0000 | 411-11 | Lebanon CIV POL | Scott records |
| 9/25/2010 - 9/24/2011 | 650-T6-LEBA-01 | 6027-0000 | 411-11 | Lebanon CIV POL | Scott records |
| 9/25/2010 - 9/24/2011 | 650-T6-LEBA-01 | 6044-1003 | 411-11 | Lebanon CIV POL | Scott records |
| 9/25/2010 - 9/24/2011 | 650-T6-LEBA-01 | 6044-1005 | 411-11 | Lebanon CIV POL | Scott records |
| 9/25/2010 - 9/24/2011 | 650-T6-LEBA-01 | 6044-1007 | 411-11 | Lebanon CIV POL | Scott records |
| 9/25/2010 - 9/24/2011 | 650-T6-LEBA-01 | 6044-1047 | 411-11 | Lebanon CIV POL | Scott records |
| 9/25/2010 - 9/24/2011 | 650-T6-LEBA-01 | 6044-1061 | 411-11 | Lebanon CIV POL | Scott records |

13.     During the period 2007 to the present, PAE intentionally and knowingly submitted materially false claims to the Department of State on a monthly basis, including but not limited to the above task orders and job numbers.  The Department of State substantially overpaid the company on a monthly basis as a result of these materially false claims for services not performed or performed in a manner that did not comply with the contract in material respects.

15.     PAE employees Thomas Barnes, Deputy Program Manager, and Program Manager Dan Moritz participated in and caused to be submitted by PAE materially false claims to the Department of State under the CIVPOL contracts utilizing time sheets assigned to certain task orders, such as Lebanon CIVPOL – 0650 in 2009.  In 2010, it was listed as Project #650TXLEBA.  In 2011, it was Project ID# 650-T6-LEBA-01; Task #6044-1061.  See also above task orders and job numbers in table in paragraph 12.  These task order numbers were then submitted to accounting to prepare invoices in PAE's home office at 1320 N. Courthouse Rd., Suite 800, Arlington, Virginia 22201 to submit to the United States government for payment.

16.     Plaintiffs are informed of facts and believe, and thereon allege, that these individuals acted at the direction of PAE management, who intended to defraud the Department of State by the submission of these materially false and inflated claims, and that in fact such false claims were submitted and resulted in payments to PAE under the government contracts and task orders for that year under contract number S-AQM-MA-08-F-3118 and successor and predecessor contracts with DoS for Equipping and Training Internal Security Forces for Lebanese Police cadets.

17.     Thomas Barnes created a hostile sexual work environment, subjecting Relator and others to unwanted sexual comments, advances, and creation of an atmosphere of sexual liaisons that was in violation of employee rights, and deprived the United States government of the

benefit of services under the contract as Barnes and others were spending time outside the workplace rather than doing their jobs, utilizing government property including automobiles and drivers paid for by the United States for personal matters, wives visits, taking side trips and spending many hours out of the office when they should have been working.

18.     Beginning in February of 2011, Barnes asked Relator Scott if she were married because he was looking for a girlfriend, even though he was married.  He stood outside the door to her personal quarters in his underwear leering and then smiled at her.  He tried to entice Ms. Scott to go on trips with him, and announced to the office that he had hired a "voluptuous model" as a personal assistant without allowing Scott to interview her even though that was Scott's job.  This personal assistant was not qualified.  When Scott rebuffed his requests for personal relationship, Barnes began insulting and yelling openly at her, subjecting her to unwarranted criticism. He rejected female applicants who were qualified because they looked "too masculine."

19.     The claims being submitted by PAE were materially false in several respects. First, PAE inflated the services being provided to the Department of State.  PAE repeatedly and routinely falsified GSA 139 forms and other forms, which are the forms that PAE was directed to use to record the hours worked by its employees and submitted with the invoices to the government for payment, profit on those hours claimed, and administrative add on.  PAE falsified records to show that employees were working when they were not, creating a fictitious system of "team building" to create a façade of work when employees were permitted and encouraged to go to the Mall, to interesting sites, to historic sites, or just to the beach, with the participation of manager of PAE in Lebanon, and then place 8 or more hours on time sheets as if they were working as called for under the contract.  They had Instructors and drivers bill for work not performed when off work during down times because of Hezbollah uprisings or other

Lebanese events.  No benefit was derived by the United States for being billed as if Instructors were on the job, and drivers and translators and administrative state were present in the office. PAE knowingly and intentionally prepared and maintained falsified GSA 139 forms, and knowingly and intentionally submitted false invoices reflecting these falsified GSA 139 forms on a monthly basis to the Department of State under all of the task orders and job numbers listed above in paragraph 12 as well as others to be identified during the periods 2009 through 2011 on all task orders under the contract number identified above.  The individuals whose time was falsified was all employees, trainers, local nationals, office personnel who worked in PAE's Beirut, Lebanon operation, other than Relator Pat Scott and John Tudbury who refused to participate in the fraud, and possibly Tom Beath.

20.     Second, PAE claims to the Department of State incorporated claims for inflated value of equipment that was worth greatly less than they billed.  PAE knowingly and intentionally prepared and maintained falsified GSA 139 forms, and knowingly and intentionally submitted false invoices reflecting these falsified GSA 139 forms on a monthly basis to the Department of State.  In addition, they paid only inflated how much they were paying employees in foreign area living allowances (FALA).  According to the State Department Website, Lebanon was rated at $77.00 per day, but employees of PAE were only being paid $56.00 per day even though they were required to live in apartments outside the Embassy in Beirut.  On information and belief, PAE intentionally and knowingly submitted invoices for reimbursement to the United States for the full amount of the allotted FALA as if that is what they paid the employees, thereby submitting false and fraudulent statements for reimbursement under the contract, as to all employees working for PAE in Beirut Lebanon for the periods listed in the above paragraph 20.

21.     Third, PAE falsely certified it was in compliance with Fly America Act under the contract to pay for travel using authorized providers at the best possible airfare rates, flying

employees to and from the United States.  PAE intentionally found the most expensive flights

and refused to allow employees to choose much lower airfares because they were being paid a

10% profit rider on all airfares sold for employees.  On information and belief, PAE knowingly

and intentionally submitted false invoices reflecting these airfares as if they were compliant on a

regular basis to the Department of State.  PAE also falsely certified it had repaid employees for

the cost of medical exams required under the contract prior to working in Lebanon, which PAE

rarely in fact reimbursed to employees, but sought reimbursement from the government as if

they did.

22.     Fourth, PAE willfully and intentionally billed for services of LSS, a Lebanese

company under the CivPol contract, for which PAE received, on information and belief, a profit

for all charges to the United States, and which claims PAE submitted with its invoices for

payment by the United States.  PAE falsified the hours of the LSS employees who, like the PAE

employees, were off of work on Saturdays, and on many holidays or times of uprising in

Lebanon, when no work was taking place under the CivPol contract, rendering no value to the

United States and falsely certifying that the work occurred.  In addition, PAE neglected to timely

pay over to LSS the monies received from the United States government, causing disruption of

work and loss of value to the United States.

23.     Fifth, PAE falsified that it had hired qualified personnel for work when its

deputy program manager, Tom Barnes, was hiring women for their looks who were not

qualified, and hiring personnel who would provide him services after hours for personal matters,

which deprived the United States of value for payments it made from 2007 to the present for

overhead and personnel, including but not limited to administrative personnel working in Beirut,

Lebanon.  For example, Barnes hired a Lebanese former model, Vanessa, to replace Relator

Scott who had no prior experience in Human Resources, hiring, qualifications, paperwork, or

administrative office work, and Barnes encouraged her to wear shorts to work.

24.     The submission of these materially false claims on a monthly basis between December 2007 and December 2011 caused the United States to pay PAE funds to which it was not entitled.  On information and belief, and based on representations of upper management during one of the training sessions, this also occurred routinely in other places in which the Defendant  has contracts with DoS/INL for civilian policing based on its express policy, training and practice of falsifying "team building" and other off duty billing.

25.     Relators complained to both DPM Barnes, and to Tom Beath, Finance Manager, about these improper practices, as well as to the PAE home office.  Mr. Beath also complained in e mails to Mr. Barnes concerning the impropriety of the billing practices, as well as to the PAE home office.

26.     In or about July of 2011, both Relators filed hotline complaints with the head office relating to human resources misconduct of Deputy Program Manager Barnes explaining the problems with contracting practices and overall mismanagement, but nothing was done to curtail his conduct.

27.     Management of PAE, including Dan Moritz and Thomas Barnes and others, were informed and/or knew of these false and fraudulent contract claims, or had reason to know, but chose to do nothing about it, and participated in submitting false and fraudulent claims and certifications to the United States government that caused the government to pay PAE, which it would not have done if it were given the true facts.  All of the requirements of the contracts noted above were material and the false claims and fraudulent certifications were material to the performance of the contracts.

28.     Additional details relating to the scheme to defraud the Department of State are set forth in Exhibits A and B which are hereby incorporated in full by reference.

29.     PAE knowingly and intentionally submitted materially false claims to the State Department for worthless services, fraudulent billing, false certifications of work done under the

contract that was not done, or was done for personal pleasure of employees of contracting party

PAE, false claims for work not performed by fictitious individuals, faulty or worthless products,

or non-existent products and services, as well as for inflated billing and pass throughs. The

submission of materially false claims on a monthly basis between 2007 to December 2011

caused the United States to pay PAE funds to which it was not entitled. During the period

December 2007 to December 2011, these false and fraudulent claims caused the United States to

pay PAE an estimated $100 million dollars that should not have been paid.

**COUNT ONE**
**FALSE CLAIMS**

30.      Relators allege and incorporate by reference the preceding allegations, including

the information set forth in Exhibits A and B.

31.      This is a claim for treble damages and forfeitures under the False Claims Act, 31

U.S.C. §3729-32, as amended.

32.      Through the acts described above, Defendant knowingly or with reckless

disregard for the truth or falsity in the face of knowledge of inflated or false claims for services

to the government, presented and caused to be presented to the United States false and fraudulent

claims, records, and statements in order to obtain payment for services not rendered pursuant to

the terms of the contracts under which Defendants operated.

33.      Through the acts described above and otherwise, Defendants knowingly made,

used, and caused to be made and used false records and statements. Defendants made these false

records and statements in order to obtain funds to which Defendants were not entitled from the

United States.

34.      Through the acts described above and otherwise, Defendants knowingly made,

used, and caused to be made or used material false records and statements to conceal, avoid, and

decrease Defendants' obligation to repay money to the United States that Defendant improperly

and fraudulently received. Defendants also failed to disclose to the United States material facts

that would have resulted in the United States' request for substantial repayments.

35.    The acts described above and otherwise, were performed by officers, agents and

employees of Defendant who were at all times acting in the course and scope of their

employment for Defendant and which conduct was ratified by Defendant.

36.    The United States, unaware of the falsity of the records, statements, and claims

made or submitted by Defendants paid and continue to pay Defendants for claims that would not

be paid if the truth were known.

37.    The United States, unaware of the falsity of the records, statements, and claims

made or submitted by Defendants – or of its failure to disclose material facts which would have

reduced government obligations – have not recovered funds that would have been recovered

otherwise.

38.    By reason of the Defendants' false records, statements, claims, and omissions, the

Department of State up to $100 million more than it should have paid subject to proof at trial.

## COUNT TWO
## FALSE CLAIMS FOR WORTHLESS AND INFLATED SERVICES

39.    Relators allege and incorporate by reference the preceding allegations, including

the information set forth in Exhibits A and B.

40.    Defendants induced the United States Department of State to pay for worthless

and inflated services, or for unqualified personnel.

41.    As set forth above, the Department of State would not have paid for services had

it known that PAE management inflated airfares, FALA, overpriced parts or supplies,

unqualified personnel hired for their looks who were not competent, and unreimbursed medical

exams for which PAE sought reimbursement.

42.    As set forth above, the State Department would not have paid for services had it

known that Defendant were failing to comply with the contract, routinely permitting improper billing for inflated parts or services for buying airfares, or unreimbursed exams, and fraudulent claims of subcontractor LSS, and instructing employees on how to lie to auditors.  The State Department would not have paid for services had it known Defendant was harassing women and men in Lebanon, subjecting women to demeaning behavior and abuse, misusing government property or drivers for personal pleasure, and otherwise violating the purposes for which the State Department entrusted PAE to be its representative in Beirut and elsewhere.

43.     This fraudulent scheme caused employees and Lebanese nationals to be compromised in their personal well being.

44.     Through the acts described above, Defendants knowingly presented and caused to be presented to the United States false and fraudulent claims, records, and statements in order to obtain payment for services not rendered pursuant to the terms of the contracts under which Defendants operated.

45.     Through the acts described above and otherwise, Defendants knowingly made, used, and caused to be made and used false records and statements.  Defendants made these false records and statements in order to obtain funds to which Defendants were not entitled from the United States.

46.     Through the acts described above and otherwise, Defendants knowingly made, used, and caused to be made or used material false records and statements to conceal, avoid, and decrease Defendants' obligation to repay money to the United States that Defendant improperly and fraudulently received.

47.     The acts described above and otherwise, were performed by officers, agents and employees of Defendant who were at all times acting in the course and scope of their employment for Defendant and which conduct was ratified by Defendant.

48.     Defendants also failed to disclose to the United States material facts that would have resulted in the United States' imposition of substantial penalties on Defendant PAE for failing to provide the contractually-required number of training sessions on Saturdays and other periods throughout the year, and to provide other services for which PAE was paid.

49.     The United States, unaware of the falsity of the records, statements, and claims made or submitted by Defendants paid and continue to pay Defendants for claims that would not be paid if the truth were known.

50.     The United States, unaware of the falsity of the records, statements, and claims made or submitted by Defendants — or of its failure to disclose material facts which would have reduced government obligations — have not recovered funds that would have been recovered otherwise.

51.     By reason of the Defendants' false records, statements, claims, and omissions, the Department of State paid $100 million more than it should have paid subject to proof at trial.

**COUNT THREE**
**DISCRIMINATION FOR REPORTING FALSE CLAIMS**

52.     Relators allege and incorporate by reference the preceding allegations, including the information set forth in Exhibits A and B.

53.     Relators were terminated and forced out of their employment by the Program Manager and Deputy Program Manager of PAE, acting in the course and scope of their employment for Defendant.

54.     Defendant terminated Relators as a direct result of an in retaliation for their Complaints to their superiors and their reporting to the Virginia corporate office of false and fraudulent claims submitted by Defendant and its officers, agents and employees as set forth above.

55.     Defendant discharged both relators "because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for … or assistance in an action … to be filed under this section."  The conduct described above and in Exhibits A and B constitutes discrimination in the terms and conditions of employment under 31 U.S.C. § 3730(h).

56.     As a direct result of the discharge of Relators from Defendant's employment, Relators "shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees."

## PRAYER FOR RELIEF

WHEREFORE, Relators pray for judgment against Defendants as follows:

A. That Defendants cease and desist from violating 31 U.S.C. §3729 *et seq.;*

B. That the Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' actions, as well as a civil penalty in the maximum statutory amount against Defendant for each violation of 31 U.S.C. § 3729;

C. That Relators be awarded the maximum amount allowed pursuant to § 3730(d) of  the Federal Civil False Claims act;

D. That Relators be awarded all costs and expenses incurred in bringing this action, including attorneys' fees; and

 E. That Relators be awarded all damages provided for under 31 U.S.C. § 3730(h) to be made whole for discriminatory discharge including reinstatement with the same seniority status Relator would have had but for the discrimination, 2 times the amount of back pay, interest on

the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

F.  That the United States and Relators receive all such other relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relators hereby demand a trial by jury.

Date:            3/10/14                    _/s/_____
                                            Scott J. Bloch
                                            LAW OFFICES OF SCOTT J. BLOCH, PA
                                            DC Bar No.  984264
                                            LAW OFFICES OF SCOTT J. BLOCH, PA
                                            1050 17th St., N.W., Suite 600
                                            Washington, DC  20036
                                            Tel.  (202) 496-1290
                                            Fax. (202) 478-0479
                                            Scott@scottblochlaw.com