# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *ex rel.*
PATRICIA SCOTT and JOHN L.
TUDBURY,

      Plaintiffs,

      v.

PACIFIC ARCHITECTS AND ENGINEERS
(PAE), INC. dba PAE Government Services,
Inc, aka PAE Group,

      Defendant.

Civil Action No. 13-1844 (CKK)

## MEMORANDUM OPINION
(January 15, 2020)

In this action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, Relators

Patricia Scott and John L. Tudbury principally allege that Defendant Pacific Architects and

Engineers, Inc. ("PAE") engaged in improper billing practices in Beirut, Lebanon pursuant to a

police training contract awarded by the U.S. Department of State.  Pending before the Court is

Defendant's Motion to Dismiss the Fourth Amended Complaint, ECF No. 64, brought pursuant to

Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Upon consideration of the pleadings,[1] the

relevant legal authorities, and the record for purposes of the pending motion, the Motion to Dismiss

---

[1] The Court's consideration has focused on the following documents:
- Fourth Am. Compl., ECF No. 63;
- Mem. of P. & A. in Supp. of Mot. to Dismiss the Fourth Am. Compl. ("Def.'s Mem."), ECF No. 65;
- Mem. in Supp. of Opp'n to Def.'s Mot. to Dismiss Relators' Fourth Am. Compl. ("Opp'n"), ECF No. 67;
- Reply Mem. in Supp. of Mot. to Dismiss Fourth Am. Compl. ("Reply"), ECF No. 70;
- Statement of Material Disclosure by Patricia Scott ("Fourth Am. Compl. Ex. A"), ECF No. 66 at 4–17; and
- Statement of Material Disclosure by John L. Tudbury ("Fourth Am. Compl. Ex. B"), ECF No. 66 at 19–27.

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision.  *See* LCvR 7(f).

is **GRANTED**. Defendant's Motion seeks to have dismissed eight of the Fourth Amended Complaint's nine counts. As explained below, those eight counts are hereby **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

The following factual narrative is gleaned from the allegations in the Fourth Amended Complaint. The allegations are taken as true solely for purposes of the pending motion and only insofar as they do not contradict the documents upon which they necessarily rely.

Defendant is a "company operating in 45 countries that has many contracts with the United States for logistics, construction, services including peace keeping, justice programs, capacity building, and international policing programs." Fourth Am. Compl. ¶ 8. Since 2007, the Department of State's Bureau of International Narcotics and Law Enforcement Affairs ("INL") has awarded Defendant contracts to provide police training and administrative services in Beirut, Lebanon, among other locations around the world. *Id.* ¶ 9. Relator Scott worked for Defendant in Lebanon from February to August 2011 as a Human Resource and Administrative Manager. Fourth Am. Compl. Ex. A ¶ 3. Relator Tudbury worked for Defendant in Lebanon from October 2009 to October 2011 as an International Police Trainer. Fourth Am. Compl. Ex. B ¶ 3. The crux of Relators' Complaint is that from approximately December 2007 to December 2011, Defendant submitted false claims for reimbursement, on a monthly basis, pursuant to the police training contract awarded by INL. *See* Fourth Am. Compl. ¶ 11. Relators allege that this conduct was facilitated by two PAE employees: Thomas Barnes, who was Deputy Program Manager in Lebanon, and Dan Moritz, who was a Program Manager in Lebanon. *Id.* ¶ 12.

Relators allege a variety of improprieties. The chief allegation is that Defendant routinely falsified forms used to record the hours worked by its personnel and to seek compensation when

invoicing the government. *Id.* ¶ 16. Relators also allege that Defendant hired personnel in Lebanon who did not meet the minimum requirements for their jobs. *Id.* ¶¶ 42–48. They further allege that drivers paid for by the government were used by Defendant's employees—in particular, Mr. Barnes—for recreational purposes unrelated to government work. *Id.* ¶ 49. Relators claim that Defendant encouraged employees to purchase airfare in violation of the Fly America Act, 49 U.S.C. § 40118. *Id.* ¶¶ 50–56. They allege that Defendant failed to pass reimbursement money down to its employees after it received money from the government to pay for employee medical examinations. *Id.* ¶¶ 76–79. Moreover, Relators allege that Defendant "billed products for more than cost such that the government was overbilled for parts." *Id.* ¶ 80. Relators also allege that Defendant engaged in a "pattern and practice" of similar fraud at other international sites beyond the Lebanon site where both Relators worked. *Id.* ¶¶ 81–88. Lastly, Relator Patricia Scott alleges that she was terminated in retaliation for her efforts to investigate the activities described above. *Id.* ¶¶ 57–75.

## II. PROCEDURAL HISTORY

The procedural history of this case is complex. Disagreement between the parties regarding the timing and effect of procedural developments has been the cause of numerous motions, hearings, and general delay. To prevent further delay, and to aid in the disposition of the present Motion to Dismiss, the Court here provides a detailed account of this action's history.

Relators filed their original Complaint under seal on November 20, 2013. Sealed Original Compl., ECF No. 1. Relators filed their First Amended Complaint on March 13, 2014. First Am. Compl., ECF No. 9. In response to Defendant's Motion to Dismiss, Relators sought and were granted leave to file a Second Amended Complaint, which they filed on August 15, 2016. Second Am. Compl., ECF No. 30. Defendant again moved to dismiss, and the Court issued a

Memorandum Opinion and Order that dismissed without prejudice "Relators' [reverse FCA] claim pursuant to section 3729(a)(1)(G), and Relator Tudbury's [employment retaliation] claim pursuant to section 3730(h)." Sept. 13, 2017 Mem. Op. and Order, ECF No. 36, at 16.

The parties have expressed disagreement regarding the September 13, 2017 Memorandum Opinion and Order's effect on Relators' action. Defendant's view is that the Court dismissed the reverse FCA and Tudbury retaliation claims, found the claim of timesheet fraud in Lebanon to be plausible and particular, and expressed no opinion as to whether Plaintiffs' other claims were sufficiently pled under Rule 8 or 9(b). Def.'s Mem. at 4. Relators agree that the reverse FCA and Tudbury retaliation claims were dismissed, but they interpret the Memorandum Opinion and Order as finding all the other Lebanon claims sufficiently pled. Relators explain:

> Defendant is arguing that the Court previously did not address the substantive claims of the 2AC in overruling the Motions to Dismiss other than the time sheet fraud in Lebanon. This is a deceptive argument. It is clear that the Court was well aware of Relators' allegations of False Claims Act violations concerning fraud schemes in Lebanon involving: overbilling on parts; improper hiring; misuse of company equipment; charging more than permitted for flights; and failing to reimburse employees for required medical examinations.

Opp'n at 11 (citation omitted).

Believing the Memorandum Opinion and Order to have found that the various "fraud schemes" listed above were sufficiently pled, Relators see Defendant's present Motion to Dismiss—which raises both old and new arguments challenging whether the "fraud schemes" are sufficiently pled—as improperly successive under Rule 12(g). *See id.* at 13. Relators opine that "[r]ather than limit its Motion to those matters not previously decided, the Defendant has now sought to relitigate the previous 12(b)(6) motions as to all claims[.]" *Id.* at 2.

The Court now provides clarification. In its September 13, 2017 Memorandum Opinion and Order, the Court dismissed Relators' reverse FCA claim and the claim of retaliation against John Tudbury. *See* Sept. 13, 2017 Mem. Op. and Order, ECF No. 36, at 1–2, 16–17. The Court

found that Relators had stated a viable claim regarding retaliation against Patricia Scott. *See id.*

The Court also found that "Relators [had] stated viable claims pursuant to sections 3729(a)(1)(A)

and 3729(a)(1)(B)[.]" *Id.* at 16–17. The Court's use of the plural "claims" did not imply that *all*

of Relators' allegations related to the cited sections were sufficiently pled. The Court's

Memorandum Opinion noted exactly which of Relators' many allegations were sufficiently pled

under sections 3729(a)(1)(A) and 3729(a)(1)(B); the only allegation on which the Court expressed

an opinion was that of improper billing for hours not worked in Lebanon. The Court explained:

> Relators have stated a plausible claim under section 3729(a)(1)(A) that meets the
> requirements of Rule 9(b). In particular, Relators have plausibly alleged that over
> the course of several years, Defendant billed time to the federal government for
> hours that were not actually worked by its personnel in Lebanon. . . . The Court
> also finds that Relators have stated a viable claim pursuant to section
> 3729(a)(1)(B) . . . This claim is 'complementary' to one under section
> 3729(a)(1)(A) . . . The principal difference between the two claims is that section
> 3729(a)(1)(A) imposes liability for false claims, while section 3729(a)(1)(B)
> imposes liability for a knowingly false 'record or statement that was material to a
> false or fraudulent claim.' . . . Here, for the *reasons already stated*, Relators have
> plausibly alleged, with sufficient particularity, that Defendant submitted fraudulent
> billing statements and claims to the federal government.

*Id.* at 9–11 (emphasis added). The only "reasons already stated" at that point in the Memorandum

Opinion were those related to improper billing for hours not worked in Lebanon. The Court's

analysis had not yet touched upon the other "fraud schemes" regarding unqualified employees,

driver transportation, airline tickets, medical reimbursements, parts overbilling, or activities at sites

beyond Lebanon. The Court's silence as to whether the other "fraud schemes" were sufficiently

pled is made clear at several places throughout the Memorandum Opinion and Order. For example,

the Court explained that "many of the counts merely state[d] different theories of recovery under

the same statutory section. To the extent that the Court determine[d] that a statutory claim can

proceed on at least one theory of liability, it offer[ed] no opinion as to the viability of the other

theories alleged in the complaint." *Id.* at 8. Accordingly, in opining that Relators had stated viable

claims pursuant to sections 3729(a)(1)(A) and 3729(a)(1)(B), the Court was affirming that the allegations of timesheet fraud in Lebanon were sufficiently pled, but it was expressing no opinion as to the other allegations.

Because the Court did not rule on the other allegations in its previous September 13, 2017 Memorandum Opinion and Order, Defendant's *present* arguments about these other allegations—renewed in the present Motion to Dismiss the Fourth Amended Complaint—do not violate the prohibition of Rule 12(g) against the filing of successive motions. Any new arguments Defendant raises regarding these other allegations are also permissible. "[I]n a limited number of cases, the district court has exercised its discretion to permit a second preliminary motion to present a Rule 12(b)(6) defense." *Sierra v. Hayden*, No. 16-1804, 2019 U.S. Dist. LEXIS 136553, at *24 (D.D.C. Aug. 13, 2019) (internal quotation marks and alterations omitted) (quoting *Lindsey v. United States*, 448 F. Supp. 2d 37, 55 (D.D.C. 2006)). "A court is most likely to permit a second such motion if 'the problem [Rule] 12(g) was designed to prevent—unnecessary delay—[is] not a concern.'" *Id.* (alteration in original) (quoting *Stoffels v. SBS Commc'ns, Inc.*, 430 F. Supp. 2d 642, 648 (W.D. Tex. 2006)). Here, unnecessary delay is not a concern; in fact, by allowing and addressing any new arguments from Defendant about issues that have not yet received a ruling, the Court is able to significantly advance the progress of this litigation. Requiring Defendant to raise any such new arguments in a separate motion for judgment on the pleadings would be an unnecessary waste of the both the Court's and the parties' resources.

At a status conference on November 20, 2017, as explained by Relators, the Court "discussed with counsel that the ruling [in its Memorandum Opinion and Order regarding the Second Amended Complaint] was not meant to address the claims outside Lebanon." Opp'n at 2. The Court stated: "I've looked through the second amended complaint, and it's my opinion that it

relates solely to the Lebanon contract . . . my feeling is that it's not specific enough as to these other countries." Def.'s Mem. Ex. 4 (Nov. 20, 2017 Hearing Tr.) at 3:25–4:2, 8:23–9:2.  The Court allowed Relators to file a Third Amended Complaint to add more specifics relating to their allegation that fraud was also committed at other sites beyond Lebanon.  *See* Am. Scheduling and Procedures Order, ECF No. 45, at 5; Second Am. Scheduling and Procedures Order, ECF No. 48, at 5.

After Relators filed the Third Amended Complaint, ECF No. 49, Defendant filed its Motion to Dismiss the Third Amended Complaint, ECF No. 50, arguing that a government audit alleged by Relators had triggered the "public disclosure bar" of the False Claims Act.  *See* Def.'s Mot. To Dismiss Third Am. Compl., ECF No. 51, at 28–31.  Shortly thereafter, and before the deadline for their opposition to that pending Motion to Dismiss, Relators filed their Motion to Amend, ECF No. 52.  The Court summarized Relators' Motion to Amend in its September 13, 2018 Memorandum Opinion and Order: "The primary question is whether Relators may drop their paragraph 41 allegation of a State Department audit, which allegation they attribute to 'a mistake by counsel in the Third Amended Complaint.'"  Sept. 13, 2018 Mem. Op. and Order, ECF No. 62, at 7.  Without expressing an opinion on the merits of the public disclosure arguments, the Court allowed Relators to file a Fourth Amended Complaint to "walk back their allegations" of a government audit.  *Id.*  The Court warned Relators that it expected them to have thoroughly "reviewed the Third Amended Complaint for any deficiencies and made the necessary edits in their Fourth Amended Complaint."  *Id.* at 2.  Moreover, "[t]he Court likewise expect[ed] that the Fourth Amended Complaint, the fifth iteration of Relators' pleading, [would] be the operative complaint for purposes of moving forward with Defendant's Motion to Dismiss and that no further need to amend will arise prior to discovery."  *Id.*  The Court further observed "what appear[ed] to

be a pattern: Relators file a version of the Complaint; Defendant moves to dismiss; and Relators seek to amend to correct an infirmity, either before or after the Court's disposition of the motion to dismiss. This cycle occurred with Relators' First, Second, and Third Amended Complaints." *Id.* at 2 n.2.

Relators filed their Fourth Amended Complaint, ECF No. 63, and Defendant responded by filing the present Motion to Dismiss, ECF No. 64. At long last, after six years and five complaints, the Court is able to rule on the vast majority of Relators' claims.

## III. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Defendant moves to dismiss Relators' claims for "failure to state a claim upon which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In assessing plausibility, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," and "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C.

2002); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)). A court may consider such documents without converting the motion to dismiss to a motion for summary judgment. *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. Appx. 4, 2002 WL 1359630 (D.C. Cir. 2002).

For purposes of the pending motion, the Court shall consider the Statements of Material Disclosure by relators Patricia Scott and John L. Tudbury in ECF No. 66. These Statements are expressly incorporated by reference in the Fourth Amended Complaint and are attached (by subsequent docket entry) as exhibits thereto. *See* Fourth Am. Compl. ¶ 25. The Court shall also consider the exhibits to Defendant's Memorandum in Support of Motion to Dismiss. Relators' Complaint necessarily relies upon these documents, and many of them are explicitly referenced in—but not attached to—Relators' Fourth Amended Complaint.

### B. Pleading a Fraud Claim Pursuant to Rule 9(b)

"Complaints brought under the FCA must also comply with Rule 9(b)." *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 49 (D.D.C. 2014). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Reading Rule 9(b) together with Rule 8's requirement that allegations be 'short and plain,' the D.C. Circuit has required plaintiffs to 'state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud,' and to 'identify individuals allegedly involved in the fraud.'" *United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 117 (D.D.C. 2015) (citation omitted) (quoting *United States ex rel. Williams v. Martin–Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004)). "Put more colloquially, an FCA plaintiff must identify the 'who, what, when, where, and how of the alleged fraud.'" *United States v. Kellogg Brown & Root Servs., Inc.*,

800 F. Supp. 2d 143, 153 (D.D.C. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

As explained by the D.C. Circuit, "the point of Rule 9(b) is to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015). Accordingly, "Rule 9(b) does not inflexibly dictate adherence to a preordained checklist of 'must have' allegations." *Id.* "In sum, although Rule 9(b) does not require plaintiffs to allege every fact pertaining to every instance of fraud when a scheme spans several years, defendants must be able to defend against the charge and not just deny that they have done anything wrong." *Williams*, 389 F.3d at 1259 (internal quotation marks omitted) (quoting *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001)).

## IV. DISCUSSION

### A. Count One: False Claims Act—Presentment

In Count One, Relators allege that "[a]s set forth in paragraphs 27–42, 43–48, 49, 50–56, 57–75, 76–79, and 80–89 Defendant violated the False Claims Act (31 U.S.C. § 3729(a)(1)(A)) by presenting false invoices for reimbursement to the U.S. Federal government." Fourth Am. Compl. ¶ 93. The Complaint paragraphs cited in Count One allege a variety of fraudulent conduct. Paragraphs 27–41 allege that Defendant submitted fraudulent time sheets which overstated the hours worked by employees in Lebanon. Paragraphs 42–48 allege that Defendant hired personnel who did not meet minimum requirements established by the U.S. government. Paragraph 49 alleges that Defendant used local drivers for non-work purposes. Paragraphs 50–56 allege that Defendant purchased airline tickets at unnecessarily high prices. Paragraphs 57–75 allege that Defendant terminated Relator Patricia Scott as retaliation for Scott's efforts to investigate

Defendant's fraudulent activity. Paragraphs 76–79 allege that Defendant required employees to pay for medical examinations but did not reimburse the employees for these expenses as required by Defendant's contract with the U.S. government. Paragraph 80 alleges that Defendant overbilled the U.S. government for parts. Paragraphs 81–89 allege that fraudulent activity, similar to that occurring in Lebanon, occurred at various other sites around the world. Each of these allegations will be discussed in turn.

*1. Time Sheets*

Relators allege that Defendant billed the U.S. government for time when Defendant's employees in Lebanon were not actually working. Fourth Am. Compl. ¶¶ 27–42. Defendant argues that this Lebanon timekeeping claim should be dismissed pursuant to the False Claims Act's "public disclosure bar." Def.'s Mem. at 32–37. As the D.C. Circuit has explained:

> Since its enactment, the FCA has empowered not only the Attorney General, but also private citizens acting on the government's behalf—known as *qui tam* relators—to sue persons who defraud the United States. . . . [T]he relator shares in any recovery. . . . The FCA's *qui tam* provisions thus encourage private citizens to expose false claims and so serve as a critical supplement to government enforcement.
>
> By the same token, however, the FCA can encourage opportunistic lawsuits based solely on information already known to the government. Accordingly, in an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits, Congress established the FCA's jurisdictional provision—the so-called public disclosure bar.

*United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 84 (D.C. Cir. 2014) (citations and internal quotation marks omitted) (quoting *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010)). The public disclosure bar requires that a court dismiss a False Claims Act action "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in one of several enumerated ways. 31 U.S.C. § 3730(e)(4)(A). Relevant here, public disclosure in a "Federal report, hearing, audit, or

investigation" triggers the bar.  *Id.* § 3730(e)(4)(A)(ii).  In the present case, Relators have pled themselves out of court; they have presented facts indicating that "substantially the same allegations" regarding fraudulent billing had already been publicly disclosed during or after a federal audit and investigation prior to Relators' attempted whistleblowing.  A relator's own factual allegations may be considered when determining whether a public disclosure has occurred. For instance, in a recent False Claims Act case, the D.C. Circuit considered the relator's factual allegations, saw some of the alleged facts as describing a public disclosure, and concluded that "[i]nstead of pleading facts that establish federal jurisdiction, Relator has thus pled himself out of court."  *Staples, Inc.*, 773 F.3d at 88; *cf. Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) ("[I]t is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible.").  Relators have done the same here.

When the Court considered Relators' request to file a Fourth Amended Complaint, "[t]he primary question [was] whether Relators may drop their paragraph 41 allegation of a State Department audit, which allegation they attribute to 'a mistake by counsel.'"  Sept. 13, 2018 Mem. Op. and Order, ECF No. 62, at 7.  The concern was that the alleged State Department audit, and related communications from government officials, might trigger the public disclosure bar. Without expressing an opinion on the merits of the public disclosure argument, the Court allowed Relators to file a Fourth Amended Complaint to "walk back their allegations" and attempt to avoid the bar.  *Id.* at 7, 10–11.

For their present Fourth Amended Complaint, Relators deleted most of their direct references to the State Department audit, but Relators chose not to remove their Complaint's express incorporation of their Statements of Material Disclosure from 2012.  *See* Fourth Am.

Compl. ¶ 25.  When Defendant notified Relators that that they had not attached the referenced Statements as exhibits to their Fourth Amended Complaint, Relators filed those Statements as a separate docket entry.  *See* Relators' Notice of Docketing of Exhibits A and B to the Fourth Am. Compl., ECF No. 66.  The first page of each of the 2012 Statements confirms that they were made "under penalty of perjury."  Fourth Am. Comp. Ex. A at 1; *id.* Ex. B at 1.  In Relator Scott's Statement, she states:

> In about June of 2011, Daniel Moritz, Program Manager who worked for PAE in their Virginia office came to visit us.  He was in charge of the CIVPOL contracts in Lebanon, Middle East, and Africa.  He had worked with DoS, INL for years prior to being with PAE.  While working for PAE, Moritz was in a meeting with the State Department and was led to believe the government had problems with the billing practices of PAE.  PAE had been audited previously in 2009, I think, but Tom Beath would know the exact dates.  Mr. Moritz trained the PAE trainers and employees how to answer auditors if they were ever asked by the State Department auditors if they ever asked questions about time sheet, told lies to fill out time sheets as if going on team building, or to say they were working on class plans.  I believe the government was sent bills for the time spent in this meeting about how to lie about billing.  I saw the time sheets from this meeting.  John Tudbury, a PAE police trainer, was in the meeting and sent me an e mail and informed me what happened contemporaneously.

Fourth Am. Compl. Ex. A ¶ 20.

The public disclosure bar on False Claims Act actions by private citizens is triggered "when the government already has enough information 'to investigate the case and to make a decision whether to prosecute' or where the information 'could at least have alerted law-enforcement authorities to the likelihood of wrongdoing.'"  *United States ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 472 (D.C. Cir. 2016) (quoting *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012)).  Relator Scott's Statement indicates that the government did have information about Defendant's "billing practices" and even led Daniel Moritz, a person external to the government, to believe that the government "had problems with the billing practices" in 2011.  *See* Fourth Am. Compl. Ex. A ¶ 20.  Relators initiated their

whistleblowing action in 2012—a year after the government had already expressed its concerns about substantially similar billing practices. Accordingly, Relators' action occurred after authorities were already alerted to "the likelihood of wrongdoing." *See Philip Morris*, 826 F.3d at 472.

That Relators allege specific instances of billing fraud about which the government may not have already been aware is of no consequence. "Merely providing more specific details about what happened does not negate substantial similarity. Additionally, a relator's ability to reveal specific instances of fraud where the general practice has already been publicly disclosed is insufficient to prevent operation of the jurisdictional bar." *Id.* (internal citations and quotation marks omitted). "[O]ur inquiry focuses not on the additional incriminating information a relator supplies, but instead on whether 'the quantum of information already in the public sphere' was sufficient to 'set government investigators on the trail of fraud.'" *Staples, Inc.*, 773 F.3d at 87 (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654–55 (D.C. Cir. 1994)). As Relator Scott tells us in her Statement, government investigators were already "on the trail of fraud" at least as early as the 2011 meeting with Daniel Moritz and possibly as early as the 2009 audit. *See* Fourth Am. Compl. Ex. A ¶ 20. The government had information about fraudulent billing, and the government's concern was communicated to someone outside the government—Daniel Moritz—before Relators ever told the government of their alleged instances of fraud. Moreover, as acknowledged by Relators, the allegations in Relators' action are substantially similar to allegations that were already publicly disclosed. *See id.*

The public disclosure bar contains an exception that allows actions related to publicly disclosed information to proceed if the relator "is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). An "original source" is an individual who "either (1) prior to a public disclosure

under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action." *Id.* § 3730(e)(4)(B). Relators do not qualify as "original sources" under the first prong of the definition because public disclosure occurred on or before the date of the June 2011 meeting with Daniel Moritz, and Relators first disclosed their information to the government in 2012. Relators do not qualify under the second prong because their allegations of specific instances of fraud do not materially add to the publicly disclosed allegations. As previously stated, "a relator's ability to reveal specific instances of fraud where the general practice has already been publicly disclosed is insufficient to prevent operation of the jurisdictional bar." *Philip Morris USA Inc.*, 826 F.3d at 472 (internal quotation marks omitted) (quoting *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999)). Prior public disclosure accordingly bars Relators' claim regarding fraudulent billing for hours not worked in Lebanon.

### 2. Personnel

Relators allege that "Defendant PAE hired personnel that did not meet the minimum requirements for their jobs and thus provided services that were substandard or wasteful to the government under the contract and did not conform to contract requirements." Fourth Am. Compl. ¶ 42. Relators list three specific employees: Sherif Ismail, Dave Kynoch, and Vanessa AbiChacra. *Id.* ¶¶ 43–48.

Relators allege that the posted job requirements for Sherif Ismail's position on the www.devex.com website included twelve years in the "criminal justice and rule of law field," and that Ismail did not have twelve years of experience. Fourth Am. Compl. ¶ 43–44. In its Motion

to Dismiss, Defendant argues that this claim "is based entirely on a faulty premise: job qualifications that Relators pulled from a third-party website. Those are not the job qualifications in the contract—which, of course, is the governing standard." Def.'s Mem. at 20 (citation omitted). Defendant attaches copies of the general contract and the Lebanon-specific task order as Exhibits 1 and 3 to its Motion to Dismiss. *See* ECF No. 65-1; ECF No. 65-2. These exhibits show the government's true job qualifications for Ismail's position; a twelve-year requirement is not present. Relators' claim necessarily relies upon the contract and task order provided by Defendant. Because a twelve-year requirement does not appear in those documents, and because those documents are the governing standard, Relators' claim is based on a nonexistent requirement. The claim therefore cannot satisfy the relevant pleading standards under Rule 8 and Rule 9(b).

Relators allege that the posted job requirements for Dave Kynoch's position included twelve years in the "criminal justice and rule of law field" and five years of experience in a management position "in support of U.S. Government international criminal justice or rule of law development contracts." Fourth Am. Compl. ¶ 46. Relators allege Kynoch was not qualified for this position, but do not specify which requirement he failed to satisfy. *Id.* ¶ 47. If Relators' allegation is that Kynoch failed to satisfy the twelve-year requirement, that allegation is untenable for the same reason that the identical allegation regarding Ismail cannot satisfy the relevant pleading standards: there is no twelve-year requirement in the governing documents. If Relators' allegation is that Kynoch failed to satisfy the five-year requirement, Relators have slightly better footing because a requirement for "Five Years International Program Management work experience" does appear in the contract provided by Defendant. *See* Def.'s Mem. Ex. 1, ECF No. 65-1, at 24 (listing responsibilities/experience for Deputy Program Manager position). However, the Lebanon-specific task order states that "Resumes of all Deputy Program Manager Candidates

will be submitted with proposals, and selection of same will be subject to INL approval." Def.'s Mem. Ex. 3, ECF No. 65-3, at 6. The task order goes on to list preferred qualifications, which do not include a five-year requirement. *See id.* In any event, the "INL" is the State Department's Bureau of International Narcotics and Law Enforcement Affairs. The government would have therefore approved Kynoch's resume and paid for his work despite any potential violation of the five-year requirement. Relators' Opposition does not dispute the government's approval. "A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016). While "the Government's decision to expressly identify a provision as a condition of payment is relevant," it is not "automatically dispositive." *Id.* at 2003. At bottom, then, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.* Because the government paid for Kynoch's work despite its knowledge that his resume may not have met all job requirements, any failure to meet those requirements is immaterial and nonactionable. *See id.*

Relators allege, without any supporting documentation, that the job requirements for Vanessa AbiChacra's position included two years of Human Resources experience, but AbiChacra had no Human Resources experience. Fourth Am. Compl. ¶ 48. Whereas Relators at least provided requirements copied from a third-party website for the positions of Ismail and Kynoch, Relators provide no documentation of any kind related to AbiChacra. Relators do not even tell us the alleged source of the requirements. Relators' allegation related to AbiChacra's hiring consists of two sentences. Such a bare accusation does not comply with the Rule 9(b) requirement that

fraud be pled with particularity. Relators' allegation regarding the hiring of unqualified employees accordingly cannot succeed.

### 3. Local Drivers

Relators allege that PAE employee Tom Barnes used contracted driver services for his own recreational use, asking drivers to take him to non-work activities and then passing the costs of these drives on to the government. Fourth Am. Compl. ¶ 49. The allegations are based on emails written by Relator Patricia Scott. *See id.* (column titled "Evidence" in chart). The Complaint mentions these emails but does not attach them. *See id.* Defendant's Motion to Dismiss includes copies of the cited emails, and Relators do not dispute the authenticity of Defendant's provided copies. *See* Def.'s Mem. Ex. 5 (July 11, 2011 Email); *id.* Ex. 6 (July 13, 2011 Email). The emails indicate that most of the recreational drives occurred when Barnes's wife was visiting for two months, *see* Def.'s Mem. Ex. 5 ("[T]he drivers are complaining that they are asked by Tom Barnes to drive Tom and his wife (who is visiting for 2 months) to sightseeing destinations most weekends, as well as during the week, that are beyond the areas where the drivers are allowed to go."), and that the drives cost twenty-five dollars each on top of the drivers' paychecks, *see id.* ("They [the drivers] said Tom gives them $25 extra on their paycheck for these excursions[.]"); *id.* Ex. 6 ("[Tom] pays them [the drivers] the extra $25 through the payroll saying her [sic] went to a meeting so it was authorized."). Even accepting these allegations as true for purposes of this motion, they are immaterial and thus not actionable under the FCA.

In the recent case of *Universal Health Services, Inc. v. United States ex rel. Escobar*, the Supreme Court established that misrepresentations must be "material" in order to be actionable under the False Claims Act; it further explained that this materiality requirement is "rigorous." 136 S. Ct. at 2002. Indeed, "[t]he materiality standard is demanding. The False Claims Act is not

an 'all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 2003 (citation omitted) (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008)). "Materiality, in addition, cannot be found where noncompliance is minor or insubstantial." *Id.* A few weekend sightseeing trips and the occasional twenty-five-dollar detour are "minor or insubstantial." *See id.* Accordingly, Relators' allegation regarding abuse of local drivers in Lebanon fails because it does not meet the materiality standard under *Escobar*.

*4. Airline Tickets*

Relators allege that Defendant PAE purchased airline tickets that did not comply with the low-price requirements of the Fly America Act, and that Defendant requested government reimbursement for these overpriced flights in violation of the False Claims Act. Fourth Am. Compl. ¶¶ 50–56. The Complaint lists two examples of such trips, showing two of Defendant's employees flying from Lebanon to the United States and back. *Id.* ¶ 56. The trips included multiple connecting flights. *See id.* Relators allege that, "[i]n an email to PAE employees on June 22, 2011 (with PAE Contracting Officer Representative Daniel Moritz copied as a recipient), Thomas Barnes instructed that unless a flight is going across the Atlantic Ocean, individual flights do not have to meet [Fly America Act] requirements." *Id.* ¶ 55. Relators did not attach a copy of the email to their Complaint. Defendant attached a copy of the email to their Motion to Dismiss as Exhibit 7. Relators do not dispute that this is the email referenced in their Complaint. The email states that the instructions about how to buy flights in accordance with the Fly America Act came from a U.S. government official, Contracting Officer Representative Ted Kontek. Whether Kontek was correct in his interpretation of the Fly America Act does not matter. According to the email upon which Relators' allegation relies, Kontek—as a representative of the U.S.

government—told Defendant that it could purchase tickets in this manner. Liability under the False Claims Act requires that the Defendant acted "knowingly" in presenting false claims or making false records. 31 U.S.C. § 3729(a). Defendant's reliance upon the government's own explanation of the Fly America Act means that Relators' airline allegation fails because Defendant could not have "knowingly" defrauded the government by following the government's directions. *See, e.g.*, *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 (7th Cir. 1999) ("If the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim. In such a case, the government's knowledge effectively negates the fraud or falsity required by the FCA.").

### 5. Retaliation

Relators allege that Defendant terminated Relator Patricia Scott as retaliation against Scott's efforts to investigate Defendant's fraudulent activity. Fourth Am. Compl. ¶¶ 57–75. In its prior September 13, 2017 Memorandum Opinion and Order, the Court determined that "Relator Scott has stated a viable retaliation claim." Sept. 13, 2017 Mem. Op. and Order, ECF No. 36, at 16–17. Defendant acknowledges that the Court has already ruled on the viability of the retaliation claim, and Defendant does not ask the Court to revisit the issue. *See* Def.'s Mem. at 3. Accordingly, further discussion here is unnecessary.

### 6. Medical Examinations

Relators allege that Defendant required employees to pay for medical examinations but did not reimburse the employees for these expenses as required by Defendant's contract with the U.S. government. Fourth Am. Compl. ¶¶ 76–79. Relators' allegation appears to be that Defendant received money from the government for these medical examinations but failed to pass the money

on to the employees who had paid for their own medical examinations.  *See id.*  Relators' argument necessarily relies upon the contract under which Relators claim the reimbursement was required. Relators did not provide a copy of the contract and did not cite to any specific contractual language defining reimbursable medical examinations.  Defendant attached a copy of the contract and the Lebanon-specific task order to its Motion to Dismiss.  *See* Def.'s Mem. Ex. 1 (contract); *id.* Ex. 3 (Lebanon-specific task order).  These documents do not contain a provision regarding reimbursement for medical exams; in fact, they contain language that contradicts Relators' position.  Most notably, Section H.8 of the general contract, titled "Contractor Personnel Medical Requirements," states that "[t]he Contractor shall be responsible for assuring that such individuals receive the proper immunizations and take the proper health measures before, during, and after said travel.  Physical examinations and immunizations will not be provided by the government." Def.'s Mem. Ex. 1 at 40.  Relators' allegation that Defendant violated the contract by not using government money to reimburse employees for medical examinations fails because the allegation is unsupported by the contract upon which it relies.

### 7. Parts Overbilling

Relators allege that Defendant overbilled the U.S. government for parts.  Fourth Am. Compl. ¶ 80.  The Complaint's allegation consists of two sentences: "PAE Employee, Elie Mattar (referred to in Relator Scott's statement as 'Eli'), billed products for more than cost such that the government was overbilled for parts.  Mr. Mattar knowingly received invoices from locals which had such parts billed for more than cost."  *Id.*  Relator Scott's Statement of Material Disclosure briefly mentions this overbilling, but it provides scant detail.  Fourth Am. Compl. Ex. A ¶ 23 ("We had an IT person named Eli.  He billed product over what it cost.  There were kickbacks involved. The government was overbilled for parts.  I supervised Eli, and I discovered that locals would give

an invoice for, say $100, when the part actually cost only $80. . . . When bills were scrutinized, [another employee] discovered the discrepancy in pricing and cost.").  Even if taken as true, these brief and non-specific accusations of general wrongdoing are insufficient to constitute a pleading of fraud with particularity as required by Rule 9(b).

8. *Other Sites Beyond Lebanon*

Relators allege that the fraudulent activities conducted at their site in Lebanon also occurred in other countries where Defendant was working under similar contracts.  Fourth Am. Compl. ¶¶ 81–88.  At the November 2017 status conference, discussing the operative Second Amended Complaint, the Court expressed that the Complaint in its then-current form likely did not allege extra-Lebanon fraud with particularity.  The Court explained: "I've looked through the second amended complaint, and it's my opinion that it relates solely to the Lebanon contract . . . So my feeling is that it's not specific enough as to these other countries."  Def.'s Mem. Ex. 4 at 3:25–4:2, 8:23–9:2.  The Court allowed Relators to file a Third Amended Complaint to add more specifics relating to their allegation that fraud was also committed at other sites beyond Lebanon. *See* Am. Scheduling and Procedures Order, ECF No. 45, at 5; Second Am. Scheduling and Procedures Order, ECF No. 48, at 5.  Relators then filed a Third Amended Complaint.  They also eventually filed the now-current Fourth Amended Complaint, but the Fourth Amended Complaint made no changes to the extra-Lebanon allegations.  Accordingly, in comparing the Second to the Third and Fourth Amended Complaints, the Court can decide whether Relators have added enough specifics to their extra-Lebanon claim such that it is sufficiently pled under Rule 9(b).

Defendant included a redline comparison of the Second and Third Amended Complaints as an exhibit to its present Motion to Dismiss.  *See* Def.'s Mem. Ex. 10.  Relators have not objected to the accuracy of this redline, and the redline makes clear that Relators added several new

paragraphs but very little substance. The new paragraphs refer to a 2009 government audit, a PowerPoint presentation on "creative billing" by Dan Moritz, and phony "team building" excursions. *See id.* at 33–35. In large part, these were already mentioned in the previous version of the Complaint. *Compare* Fourth Am. Compl. ¶¶ 82, 83, *with* Second Am. Compl. ¶¶ 37, 41 (detailing creative billing training and presentation, billing for phony team building, and audits). Relators seemingly added a long list of international task order numbers, but this list is simply copied and pasted from elsewhere in the earlier Second Amended Complaint such that it now appears twice in the Fourth Amended Complaint. *Compare* Fourth Am. Compl. ¶¶ 9, 83, *with* Second Am. Compl. ¶ 9. Relators seemingly added a paragraph about fraud in Djibouti, but this too is essentially copied and pasted from the Second Amended Complaint. *Compare* Fourth Am. Compl. ¶¶ 86, 87, *with* Second Am. Compl. ¶¶ 81, 82. The only *new* content that is not merely a restatement of old facts is the allegation that Relator Scott once told a fellow employee of her concerns about Defendant's timekeeping in Lebanon, and the employee told her that was just "the way they did business," in his previous station in Liberia. Fourth Am. Compl. ¶ 85. Even when combined with the thin allegations of previous complaints, the addition of this single statement is not enough to plead a complex multinational fraud scheme with the particularity required by Rule 9(b).

In sum, the Court agrees with Defendants that Relators have failed to plead most of Count One with particularity. The exception is Relator Scott's retaliation claim, which the Court previously found viable, and which is alleged separately in Count Nine. Accordingly, the Court grants Defendant's Motion to Dismiss with respect to the claims encompassed by Count One discussed above.

B. Count Two: False Claims Act—Fraudulent Inducement

In Count Two, Relators allege that Defendant violated the False Claims Act when it "knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government[.]"  Fourth Am. Compl. ¶ 98.  In support of Count Two, Relators cite to many (but not all) of the same paragraph sections cited in Count One: paragraphs 27–42, 43–48, 57–75, and 80–89.  *Id.* ¶ 102.  These paragraph sections allege submission of fraudulent time sheets in Lebanon, hiring of unqualified personnel, retaliatory firing of Relator Patricia Scott, overbilling for parts, and fraudulent activity at various other sites beyond Lebanon.  In other words, Count Two alleges a false claim that mirrors many of the false claim allegations in Count One.  Because these paragraphs draw upon the same allegations and underlying facts as Count One did, the above analysis for Count One similarly applies here.  As explained in the analysis of Count One above, only one of these allegations still survives—the alleged retaliatory firing of Relator Scott.  The Complaint includes a separate Count Nine dedicated solely to the surviving allegation of retaliatory firing.  All other allegations shall therefore be dismissed due to the False Claims Act's public disclosure bar or due to Relators' failure to sufficiently plead their claims under Rules 8 and 9(b).  Accordingly, Count Two is dismissed; Relators may proceed with their retaliation claim under Count Nine.

C. Count Three: False Claims Act—Implied False Certification

In Count Three, Relators allege that Defendant violated the False Claims Act because "[w]ith each submission of fraudulent invoices to the U.S. Government, as outlined above, Defendant impliedly represented falsely that such submitted invoices were accurate as required by the Contract."  Fourth Am. Compl. ¶ 109.  Moreover, they allege that "the U.S. Government relied on such false representations and, presuming such fraudulent invoices were accurate, paid

Defendant more than what ought to have been reimbursed under the Contract." *Id.* ¶ 110. In support of Count Three, Relators cite to the same paragraph sections cited in Count Two: paragraphs 27–42, 43–48, 57–75, and 80–89. *Id.* ¶ 108. These paragraph sections allege submission of fraudulent time sheets in Lebanon, hiring of unqualified personnel, retaliatory firing of Relator Patricia Scott, overbilling for parts, and fraudulent activity at various other sites beyond Lebanon. Like with Count Two, Count Three's false claims allegations draw upon the same allegations already explored in the discussion of Count One. And as described in the analysis regarding Count One, only one of these allegations still survives—the retaliatory firing of Relator Scott. All other allegations shall be dismissed due to the False Claims Act's public disclosure bar or due to Relators' failure to plead with plausibility and particularity. Count Three is therefore dismissed; Relators may proceed with their retaliation claim under Count Nine.

D. Count Four: False Claims Act—Substandard Contract Services

In Count Four, Relators allege that Defendant violated the False Claims Act when it "hired personnel that were unqualified for the positions for which Defendant hired them and for which Defendant was being reimbursed under its contract with the United States." Fourth Am. Compl. ¶ 116. In support of Count Four, Relators cite to paragraphs 43–48 and 80–89 of their Complaint. *Id.* These paragraph sections allege hiring of unqualified personnel in Lebanon and similar fraudulent activity at various other sites beyond Lebanon. Like with the previous two counts, Count Four's false claims allegations draw upon the same allegations already explored in the discussion of Count One. As described in that analysis, Relators have not sufficiently pled these allegations. Accordingly, Count Four is dismissed.

E. Count Five: False Claims Act—Non-Conforming Goods

In Count Five, Relators allege that Defendant violated the False Claims Act when it "submitted invoices for reimbursement containing requests for reimbursement for IT hardware that had been fraudulently marked up due to kickbacks[.]" Fourth Am. Compl. ¶ 123. This count similarly draws upon the allegations already dissected in the discussion of Count One in the context of paragraphs 76–87 of the Fourth Amended Complaint. As the Court previously explained in that discussion, this claim consists of a mere two sentences; it fails to meet the pleading standards laid out in Rule 9(b). Accordingly, Count Five is dismissed.

F. Count Six: False Claims Act—Fly America Act

In Count Six, Relators allege that Defendant violated the False Claims Act when it "knowingly purchased airline tickets that were non-compliant with the Fly America Act (49 U.S.C. § 40118) resulting in higher ticket prices." Fourth Am. Compl. ¶ 132. These allegations also rely upon allegations in paragraphs 50–56 and 57–75 of the Fourth Amended Complaint regarding false claims that the Court previously examined in the context of Count One. As explained in that analysis, Relators have failed to sufficiently plead this claim. Accordingly, Count Six is dismissed.

G. Count Seven: False Claims Act—Medical Examinations

In Count Seven, Relators allege that Defendant violated the False Claims Act when it "knowingly submitted invoices to the U.S. government which included expenses for Relators' medical examinations, but Defendants did not properly reimburse Relators for such medical expenses." Fourth Am. Compl. ¶ 140. Count Seven, like the previous counts, relies upon allegations (in paragraphs 76–79 of the Fourth Amended Complaint) that the Court considered in its discussion of Count One above. As explained there, Relators have failed to sufficiently plead this claim. Accordingly, Count Seven is dismissed.

## H. Count Eight: False Claims Act—Driving Services

In Count Eight, Relators allege that, "[a]s described in paragraphs 49, 61, 57–75, and 82–87," Defendant violated the False Claims Act when it "knowingly submitted invoices to the U.S. government which included expenses of driving services provided by PAE subcontractor LSS, but such services were fraudulently used for recreational, non-government, non-work purposes." Fourth Am. Compl. ¶ 150. This claim also relies upon the allegations regarding driving services already examined in this Court's consideration of Count One. As explained in the analysis of Count One above, this claim fails to meet the materiality standard established by the Supreme Court in *Escobar*. Accordingly, Count Eight is dismissed.

## I. Count Nine: False Claims Act—Retaliation

In Count Nine, Relators allege that Defendant terminated Relator Patricia Scott's employment in retaliation for her complaints to superiors and investigation of Defendant's fraudulent activity. Defendant's Memorandum in Support of Motion to Dismiss acknowledges that Relators should be allowed to proceed on this Count because the Court previously ruled that the retaliation claim is sufficiently pled. Def.'s Mem. at 3. Accordingly, in granting Defendant's present Motion, the Court does not consider the dismissal of Count Nine.

## V. CONCLUSION

When the Court allowed Relators to submit a fifth version of their Complaint, the Court made clear that it expected them to have thoroughly "reviewed the Third Amended Complaint for any deficiencies and made the necessary edits in their Fourth Amended Complaint." Sept. 13, 2018 Mem. Op. and Order at 2. Moreover, "[t]he Court likewise expect[ed] that the Fourth Amended Complaint, the fifth iteration of Relators' pleading, [would] be the operative complaint for purposes of moving forward with Defendant's Motion to Dismiss and that no further need to

amend [would] arise prior to discovery." *Id.* In other words, this was Relators' last chance to fix any errors in their pleading. Relators have had numerous opportunities to amend and modify their claims—an additional attempt would be unlikely to result in a different outcome.

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 64, is **GRANTED**. Counts One, Two, Three, Four, Five, Six, Seven, and Eight are **DISMISSED WITH PREJUDICE**. An appropriate Order accompanies this Memorandum Opinion.

Date:   January 15, 2020

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge